534 So.2d 545 (1988)
Catherine Clark MANSON, Mary Clark Hollins and Grace E. Clark
v.
Hattie Day MAGEE, et al.
No. 58067.
Supreme Court of Mississippi.
November 23, 1988.
Jim B. Tohill, C. York Craig, Jr., Watkins, Ludlam & Stennis, Jackson, for appellants.
Luther M. Thompson, Heidelberg, Woodliff & Franks, Jackson, for appellees.
Before DAN M. LEE, P.J., and ANDERSON and ZUCCARO, JJ.
ZUCCARO, Justice, for the Court:
This is an appeal from a judgment of the Chancery Court of Pike County sustaining a motion of appellees for summary judgment.
This lawsuit involves interpretation of an oil, gas and mineral reservation in a warranty deed and no controversy about the surface.
Prior to his death on January 19, 1948, Dr. Willis F. Cotten and his wife, Christine Gardner Cotten, were the owners as tenants in common of the fee simple absolute title to 461.5 acres of property in Pike County. Doctor Cotten died testate and devised to Otis Cotten, Roger C. Cotten, Katherine Benjamin, and Francis A. Herrington each a 1/8th interest of all oil, gas and other minerals that he owned in said property. The will of Dr. Cotten specifically stated:
The above bequests are subject to the right of my wife, Mrs. Christine Cotten, to lease and re-lease the above lands for mining purposes and to retain the lease money and delay rentals as and for her own.
The devise to the four parties by Dr. Cotten, subject to the rights of Christine Cotten, is designated "the burden" by appellants and appellees. Dr. Cotten devised the remainder of his property to his wife, Christine Gardner Cotten and the ownership of the oil, gas and minerals at Dr. Cotten's death was as follows:

 OWNER MINERAL INTEREST
Christine Gardner 42/56ths
Otis Cotten )
Roger C. Cotten ) Total 14/56ths
Katherine Benjamin )
Francis A. Herrington )

On September 7, 1969, Christine Gardner Cotten, Dr. Cotten's wife, died testate leaving all of her property equally to eight people; six sisters, one brother and her mother, Demaris Day Gardner (Mrs. Cotten Heirs). Her mother, Demaris Day Gardner, *546 died intestate and, therefore, all of Demaris Day Gardner's interest in the subject property passed to the other seven devisees. Title to the minerals of the subject property immediately after the death of Christine Gardner Cotten and her mother, Demaris Day Gardner as to Mrs. Cotten's 3/4 interest was as follows:

 OWNER MINERAL INTEREST
 Prentis William Gardner 6/56ths
 Pearl Vivian Cullom 6/56ths
 Ruby Ione MacIntosh 6/56ths
 Maude Avis Gordon 6/56ths
 Grace Truman Smith 6/56ths
 Ruth G. Patterson 6/56ths
 Hattie Day Magee 6/56ths

On December 26, 1970, "the Mrs. Cotten Heirs" conveyed by separate general warranty deeds the subject property to Dr. William B. Clark. Those conveyances contained the following provision, the interpretation of which is what this lawsuit is primarily about:
Grantors except and reserve herefrom one-half of whatever oil, gas and other mineral interest is owned by them in the described land at the time of this conveyance, conveying to the grantee one-half of said interest. (Emphasis added)
By warranty deed dated March 22 or 27, 1972, Dr. Clark conveyed the tract to George T. Flynt and Donna R. Flynt. Dr. Clark's deed, however, provided:
There is reserved from this conveyance an undivided 3/4 interest in land to the whole of the oil, gas and minerals, lying and being situated in, on and under the above described property; and there is conveyed in this instrument to the Grantees only a 1/4th undivided interest in and to the oil, gas and minerals, lying and being situated in, on and under the above described property, together with the right of ingress and egress to remove, store, mine and transport the same.
Dr. Clark died on March 8, 1975. The appellants, Catherine C. Manson, Grace E. Clark, and Mary Clark Hollins (The Clark Heirs) are the daughters of Dr. Clark and inherited Dr. Clark's mineral interest in the subject property.
Shell Western E & P Inc. (Shell) obtained oil and gas leases on the subject property and spread the responsibility for "the burden" (the term used by the parties when referring to the interest of Otis Cotten, et al.) proportionately among three groups of mineral owners: 1) Mrs. Cotten's Heirs; 2) the Flynts; and 3) the Clark Heirs. The Flynts filed an action against Shell and others having an interest in the property because Shell allegedly incorrectly deducted a portion of money owed to the Flynts for responsibility for the burden. The Clark heirs filed a cross-claim against Shell and the Mrs. Cotten's heirs (and the heirs and devisees of the Cotten heirs) to reclaim amounts that Shell deducted from monies due the Clark heirs for the Clark heirs' alleged portion of the burden.
Mrs. Cotten's heirs moved for summary judgment against the Clark heirs' cross-claim against the Cotten heirs. The trial court granted that motion for summary/declaratory judgment on October 17, 1986 and ruled against the Clark heirs on their cross-claim.
The appellants (Clark heirs) appeal the ruling by the trial court granting Mrs. Cotten's heirs summary judgment and assign errors formulated in two questions.
I. DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT AGAINST THE APPELLANTS?
II. DID THE TRIAL COURT ERR IN FINDING THAT THE DEED TO APPELLANTS FROM MRS. COTTEN'S HEIRS EXCEPTED FROM THE CONVEYANCE AND THE WARRANTY ANY INTEREST OUTSTANDING IN THIRD PARTIES AS OF THE DATE OF THE DEED?
To answer the first question it is necessary that this Court construe the deed from the Mrs. Cotten's Heirs to Dr. Clark. Accordingly, we combine the discussion of these two assignments of error.
The appellants in this case constitute all of the heirs and devisees of Dr. William B. Clark and the appellees are the successors in interest to the grantors from Mrs. Cotten's Heirs.
*547 Dr. William B. Clark obtained the interest he had in the subject property by virtue of the deed from the Cotten heirs who obtained their interest from Christine Cotten. Christine Cotten had a three-fourth interest in the whole of the oil, gas and minerals subject property and the remaining one-fourth interest was vested in Dr. Cotten's heirs. Hence the language in the deed by them to Clark which read:
Grantors except and reserve herefrom one-half of whatever oil, gas and other mineral interest is owned by them in the described land at the time of this conveyance, conveying to the grantee one-half of said interest. (Emphasis added)
The Clark heirs take the position that their father, Dr. Clark, received one-half of all minerals and not one-half of three-fourths of the minerals. We disagree.
The court in its order granting the summary judgment in favor of Mrs. Cotten's heirs stated:
The court finds that any interest outstanding in third parties as of the date of the conveyance from Hattie Day Magee, et al to William B. Clark was excepted from the conveyance and the warranty. The Grantors and the Grantee each received 1/2 of whatever mineral interest was owned by the Grantor as of the date of the conveyance.
The Clark heirs and Mrs. Cotten's heirs both state in their respective briefs and conceded during oral argument that the only question to be considered by this Court is the construction of Mrs. Cotten's heirs' deeds to the Clarks.
The appellants argue that Mrs. Cotten's heirs' deeds in the present cases warrants title to all of the property described in the granting clause and includes a general warranty of all of the minerals as well as the surface.
What appellants would have this Court do would be to read the following portion of the deed from the Cottens to the Clarks as follows:
Grantors except and reserve herefrom one-half of the oil, gas and other mineral interest in the described lands conveying to the grantee one-half of said interest.
In reality the deed reads as follows:
Grantors except and reserve herefrom one-half of whatever oil, gas and other mineral interest that is owned by them at the time of this conveyance, conveying to the grantee one-half of said interest. (Emphasis added)
The appellants argue that the "Duhig Rule" is applicable to this case. We hold that it is not. According to appellants, the Cotten heirs conveyances transferred the surface and a one-half mineral interest to Clark and reserved a one-half mineral interest to Mr. Cotten's heirs and Mrs. Cotten's heirs. If this were so, the heirs of Dr. Cotten would still retain their 1/4 interest but the heirs of Christine Cotten would retain only a 1/4 interest and Dr. Clark would get 1/2 interest in the minerals.
Duhig v. Peavy-Moore Lumber Co., Inc., 135 Tex. 503, 144 S.W.2d 878 (1940) involved a case wherein the grantor breached his warranty because there was an outstanding one-half interest in the grantor's predecessor in title; yet, the grantor attempted to retain an undivided one-half interest in the property. The grantor did not own two halves. But he still conveyed one-half to the grantees. The Duhig Rule stands for the proposition that: where a warranty deed is executed by a grantor who took the realty being conveyed subject to a reservation of a one-half mineral interest and same grantor then attempts to convey and retain a one-half mineral interest, such warranty deed conveys to the grantee an absolute fee simple subject only to the reservation of the one-half interest retained by the grantor's predecessor in title. In Duhig the Texas court stated that the grantor and those claiming under him were estopped from claiming the one-half interest in the mineral rights which grantor attempted to reserve for himself.
The Duhig case also stands for the proposition that a deed which purports to convey a fee simple or a lesser definite estate in land and contains covenants of general warranty of title or ownership will operate as an "estoppel" against the grantor to *548 prevent him from asserting an after-acquired title or interest in the land, or the estate which the deed purports to convey, as against the grantee and those claiming under him.
The distinguishing factor in the present case and Duhig is that the grantor in this case reserved one-half of the interest actually owned, whereas in Duhig the grantor attempted to reserve one-half while granting one-half and the grantor never mentioned that there was an outstanding interest vested in his predecessor in title. Because he did not own two-halves of the mineral interest the Duhig grantor was estopped from asserting superior right over the grantee to the sole one-half of the minerals in question. The Duhig Rule and the Mississippi cases construing the Duhig Rule are not applicable to the case at bar.
Furthermore, the rule of construction that, where two clauses of a deed are repugnant, the first must prevail, or that an attempted reservation is void when repugnant to the granting clause cannot be involved where, from an examination of the whole instrument, the intention of the parties thereto is plain. Dale v. Case, 217 Miss. 298, 64 So.2d 344, 348 (1953).
The well-established rule in Mississippi is that a deed must be construed as a whole without separating it into its formal parts, and that the intent of the parties thereto be gathered from the language therein employed. Deason v. Cox, 527 So.2d 624 (Miss. 1988); Lackey v. Corley, 295 So.2d 762 (Miss. 1974); Rogers v. Moran, 250 Miss. 9, 164 So.2d 480 (1964); Ford v. Jones, 226 Miss. 716, 85 So.2d 215 (1956); Texas Gulf Producing Co. v. Griffith, 65 So.2d 834, 836 (Miss. 1953); Gulf & S.I.R. Company v. Patten, 180 Miss. 756, 178 So. 468 (1938); Goff v. Avert, 122 Miss. 86, 84 So. 134 (1920).
Furthermore, when the meaning of language is to be determined by this Court, the intent of the parties, expressed in words they have used must govern. Goff v. Avert, 122 Miss. 86, 84 So. 134 (1920).
In the case of Gulf & S.I.R. Co. v. Patten, 180 Miss. 756, 178 So. 468, 469 (1938) we stated that,
In construing deeds, the intention of the parties is sought to be effectuated, of course, but this intention must be found in the language of the instrument, so that effect must be given, if possible, to each item of the written contents, and no item shall be stricken or rejected so long as it may be harmonized with the other items.
Applying the above rules of construction of the instrument under review, we find no difficulty in determining that the deed conveyed and warranted in fee simple only the surface of the property conveyed by the Cottens and operated as a quit-claim of one-half of whatever minerals the grantors owned at the time of the conveyance. Mississippi Code Annotated § 89-1-37 (1972) provides: A conveyance without any warranty shall operate to transfer the title and possession of the grantor as a quit-claim and release.
The conveyance by the Cottens to Dr. Clark contained two separate conveyances, one for the surface and one for the minerals thereunder. The conveyance of the surface used the word warrant followed by no restrictive words. Therefore, pursuant to Miss. Code Ann. § 89-1-33 (1972) all five covenants were transferred.
However, the conveyance of the minerals did not contain a warranty and therefore acted as a quit-claim pursuant to Miss. Code Ann. § 89-1-37 (1972) quoted above.
According to Rosenbaum v. McCaskey, 386 So.2d 387, 389 (1980):
A quitclaim deed operates only as a conduit to pass the grantor's interest to the grantee. To determine what interest passes by a quitclaim deed, a grantee, or any interested person, must look to the chain of title prior to the deed to determine what interest the grantor had to convey and subtract therefrom any express reservation in the quitclaim deed. If the grantor had a smaller interest than the deed purports to convey, the grantee may not complain. The grantor by a quitclaim deed makes no representation, covenant or warranty of title and has no *549 duty or obligation to protect the conveyance against any prior conveyance to others in the chain of title. In such a situation our statute affords the grantee the right to claim for himself any interest in the land covered by the description in the deed, even if that interest is not then owned by the grantor, but is subsequently acquired by him.
The Clarks were put on notice by the language "whatever oil, gas and other mineral interest is owned by them ..." and upon such notice should have looked at the chain of title prior to the deed to determine what interest the Cottens had to convey.
The chancellor in granting summary judgment stated that:
Any interest outstanding in third parties as of the date of the conveyance was excepted from the conveyance and the warranty.
The chancellor was correct in granting summary judgment in favor of appellees and we affirm.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
PRATHER, J., not participating.